IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

| | |
|---|---|
| MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY; AND THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES, | Case No.<br><br>Hon. |
| Plaintiffs, | |
| v. | |
| LEE MUELLER; BOYCE MICHIGAN, LLC; EDENVILLE HYDRO PROPERTY, LLC; BOYCE HYDRO POWER, LLC; BOYCE HYDRO, LLC; WD BOYCE TRUST 2350; WD BOYCE TRUST 3649; WD BOYCE TRUST 3650; STEPHEN B. HULTBERG; AND MICHELE G. MUELLER, | |
| Defendants. | |

---

Nathan A. Gambill (P75506)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
Attorney for Plaintiffs
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
GambillN@michigan.gov
allisonyokomd@michigan.gov

The Kogan Law Group, P.C
Lawrence A. Kogan (NY # 2172955)
Attorneys for Defendants
100 United Nations Plaza, Suite #14F
New York, NY 10017
(212) 644-9240
lkogan@koganlawgroup.com

Aaron M. Phelps (P64790)
VARNUM, LLP
Attorneys for Defendants
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336-6000
amphelps@varnumlaw.com

---

**DEFENDANTS' NOTICE OF REMOVAL TO THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN**

PLEASE TAKE NOTICE that Defendants Lee Mueller, Boyce Michigan LLC, Edenville Hydro Property LLC, Boyce Hydro Power LLC, Boyce Hydro LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650, Stephen B. Hultberg, and Michele G. Mueller, by their undersigned counsel, hereby removes to this Court the state court action described below:

## I.     INTRODUCTION

1.      On June 9, 2020, an action was commenced in the Circuit Court for the 30th Judicial Circuit of Ingham County, Michigan, entitled, *Michigan Department of Environment, Great Lakes, and Energy; and the Michigan Department of Natural Resources v. Lee Mueller, Boyce Michigan LLC, Edenville Hydro Property LLC, Boyce Hydro Power LLC, Boyce Hydro LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650, Stephen B. Hultberg, and Michele G. Mueller*, as case No. 20-317-CE (the "State Action").  A copy of the new state court Complaint is attached as **Exhibit A**.

2.      Michigan's new State Action consists of a multi-count Complaint seeking equitable relief, and asserting against Defendants claims of conversion, public nuisance, unjust enrichment, and violations of environmental and dam safety statutes.

3.      Plaintiffs served copies of the State's new Complaint and Summons initiating such action to Defendants only through electronic email means on said date, and as such, did not effectuate service of process consistent with Michigan Court Rule 1.109(G)(6)(a)(i) and Michigan Rules of Civil Procedure 2.107(C)(2).   Because this Notice of Removal is filed within thirty days of filing and Defendants' receipt of the State's new Complaint, it is timely. See 28 U.S.C. § 1446(b).

4.     This Court has original jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, and it has supplemental jurisdiction over the remaining state law claims in this case pursuant to 28 U.S.C. §1367(a).

5.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Western District of Michigan is the federal district in which the State Action is pending.[1]  In addition, the United States District Court for the Western District of Michigan is the proper venue pursuant to 28 U.S.C. §1441(a) because Ingham County, Michigan, where the Honorable Wanda M. Stokes sits, is located within the Western District of Michigan, Southern Division.  *See* 28 U.S.C. § 102(b)(1); Local Civil Rule 3.2(a).

## II.     REMOVAL IS PROPER BASED ON FEDERAL QUESTION JURISDICTION

6.     The basis for removal is federal question jurisdiction pursuant to 28 U.S.C. § 1331 because: (**a**) the new state law claims of the State's new Complaint necessarily raise federal issues actually disputed, the resolution of which, including the right to relief, appears to depend upon the construction or application of multiple federal statutes and regulations; (**b**) which federal issues are substantial, indicating an interest in claiming the advantages thought to be inherent in a federal forum; *and* (**c**) are capable of resolution in federal court without disrupting the federal-state balance approved by Congress, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Miller v. Bruenger*, 949 F.3d 986, 992 (2020); *Fried v. Sanders*, 783 F. App'x 532, 534 (6th Cir. 2019); *Mays v. City of Flint, Mich.*, 871 F.3d 437, 449 (2017); *Mikulski v. Centerior*, 501 F.3d 555, 567 (6th Cir. 2007); *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-314, 319 (2005).

---

[1]     *See* Ingham County, *30th Judicial Circuit Court*, <https://cc.ingham.org/courts_and_sheriff/circuit_court/stokes.php> and Ingham County, *30th Judicial Circuit Court, Judges, Honorable Wanda M. Stokes*, <https://cc.ingham.org/courts_and_sheriff/circuit_court/index.php>.

7.    The federal issues necessarily raised are substantial because: (**a**) the federal questions are important; (**b**) this Court's decision on those federal questions will resolve those issues of the case; (**c**) this Court's decision as to those federal questions will likely control the disposition of similar federal issues raised in the federal action currently pending before this Court, which, as noted below, will soon include a federal agency as a named party whose compliance with a federal statute and regulations is in dispute, entitled *Lee W. Mueller, Boyce Hydro Power, LLC, Boyce Hydro, LLC and Boyce Michigan, LLC v. Michigan Department of Environment, Great Lakes & Energy, Michigan Department of Natural Resources, and Brian Rudolph, David Pingel, and Kyle Kruger, Individually*, Civil Action No. 1:20-cv-00364-PLM-RSK, and which also raises substantial federal issues under the Constitution of the United States. *Fried*, 783 Fed. Appx. at 536; *Mikulski*, 501 F.3d at 570; and (**d**) this Court's decision as to those federal questions will likely control the disposition of similar federal issues raised by Plaintiffs in a previously filed State Complaint which was recently removed to this Court in the related case entitled, *Attorney General Ex Rel The People of the State of Michigan et al v. Mueller et al*, Case No. 1:20-cv-520 (ECF Nos. 11, 12, 13).

8.    The similar federal questions raised in these three actions concern: (**a**) whether the Federal Energy Regulatory Commission ("FERC"), the federal agency which held primary and exclusive jurisdiction over the Edenville Dam to ensure dam and public safety during the term of Defendant Boyce Hydro Power, LLC's FERC license, had set the appropriate duty of care to ensure public safety which Defendants as the Edenville Dam operators had followed both before the license revocation, and also after it in the absence of Michigan Department of Environment, Great Lakes and Energy Water Resources Division ("EGLE-WRD") Dam Safety division direction, and whether that duty of care was adequate to protect public safety; (**b**) whether the

prior Boyce Edenville Dam FERC license following issuance to Defendants had thereafter been modified during the license term by subsequent FERC orders authorizing Defendants to take preventative interim dam and public safety measures, including the 2018-2019 and 2019-2020 drawdowns of Wixom Reservoir (Lake) up to four feet below normal winter pool level prior to and during the harsh central Michigan winter and spring weather seasons to ensure against dam failure until the construction of costly FERC-ordered auxiliary spillways could be completed, especially after Edenville Dam was unable to run flood waters through its decommissioned hydroelectric generating turbines, leaving only the dam's six old Tainter gates to regulate and pass flood stage waters; **(c)** the extent to which the acts of the predecessor to Plaintiff EGLE-WRD ("Michigan Department of Environmental Quality ("MDEQ") and its officials, ultimately found legally culpable for the severe illnesses and bodily harms caused to the residents of Flint Michigan by unregulated toxic drinking water as the result of a severe regulatory governance failure), and the acts of Plaintiff Michigan Department of Natural Resources ("MDNR") and its officials, which Plaintiffs and their officials are named as Party-Defendants in the related action pending before this Court, engendered these agencies' arbitrary, capricious and overzealous regulation and enforcement of Europeanized state environmental statutes imposing various permitting regimes implementing various "Europeanized" international environmental treaties overseen and revised by the U.S. Environmental Protection Agency ("USEPA") of the prior presidential administration (championed by the current Democratic presidential candidate) to incorporate European legal norms such as the precautionary principle that are anathema to the exercise of private property rights and that **(i)** consequently violated the Defendants' constitutional rights, **(ii)** consistently, in furtherance of extensive MDEQ/MDNR liaison with FERC concerning the Edenville Dam (e.g., (with one MDNR official named as a Party

Defendant in the related federal action pending before this court) dispatching no fewer than 25 letter correspondences to FERC, from 2015 through 2018, falsely alleging Defendants' noncompliance with said permitting regime when such permits had, indeed, been secured), aggravated, impeded, delayed and/or prevented, from 2010 until 2018, on environmental and recreation grounds, Defendants' ability to undertake the FERC-mandated auxiliary spillway construction and other dam safety repairs and measures at the Edenville Dam site solely to ensure dam and public safety solely to prevent the tragic failures of the 96-year-old dam (and the related Sanford Dam) that occurred on May 19, 2020, and (**iii**) significantly contributed to FERC's issuance of an "all-work stop order" in 2015, a decommission (de-electrification) order in 2017, and a license revocation order in 2018, thereby resulting in Defendants' loss of all Edenville Dam operating revenues comprising more than 50% of the revenues Defendants had earned annually from operating all four of the dams they own and operate along the Tittabawassee River in central Michigan (Secord Dam, Smallwood Dam, Edenville Dam and Sanford Dam), thereby, precluding Defendants from securing privately and publicly the financial capital indispensable to constructing the auxiliary spillways that FERC had demanded; (**d**) whether FERC's Order of May 20, 2020, attached hereto as **Exhibit B**, directing Defendants to (**i**) fully lower the reservoirs behind the three other FERC-licensed dams Defendants own and operate upstream and downstream from the Edenville Dam spanning Gladwin and Midland Counties, Michigan – i.e., Sanford Dam, Smallwood, Dam, and Secord Dam – to allow for the safety inspections of each such dam after the flood flows receded, (**ii**) provide copies of the inspection reports within 3 days of the inspection but provide a verbal summary of findings immediately upon completion to the Chicago Regional Engineer, (**iii**) maintain fully lowered reservoirs and develop an interim plan to safely pass flows (without hydroelectric generation)

until a safe reservoir elevation can be established and implemented, (**iv**) immediately begin formation of a fully Independent Forensic Investigation Team comprised of members possessing very specific expertise and experience to perform a detailed forensic analysis to focus on the Sanford Dam's overtopping as the result of the May 19, 2020 Edenville Dam breach[2] while FERC reaches out to EGLE-WRD Dam Safety regarding coordination of the future State investigation of the Edenville Dam breach, and (**v**) provide the resumes of each proposed Forensic Investigation Team member to FERC for its review and approval, *and* FERC's letter of June 9, 2020, attached as **Exhibit C**, indicating that EGLE had previously agreed with FERC, in a May 28, 2020 letter issued to Defendants, attached as **Exhibit D**, to coordinate their respective required forensic investigations using "the same forensic team to work on all four Boyce Hydro project investigations and to prepare one report to cover the entire flooding and dam breach event of May 19, 2020," preempts EGLE's standalone demand for the immediate forensic investigation of the causes of the Edenville Dam breach, and for the injunctive relief Plaintiffs seek requiring Defendants' immediate reconstruction of Edenville Dam, immediate cessation of the soil erosion caused by the breach of Edenville Dam and the rapid shallow naturally occurring flow of the soil-bottomed Tittabawassee and Tobacco Rivers, and their immediate restoration of the man-made Wixom Reservoir and its natural and wildlife resources; (**e**) whether Wixom Reservoir (Lake) constitutes part of the "critical habitat," of the snuffbox mussel which the U.S. Fish and Wildlife Service had federally listed in 2012 as an "endangered species" under U.S. Endangered Species Act; (**f**) whether certain areas identified as located on and contiguous to Wixom Lake allegedly exposed and destroyed by Defendants Wixom Lake 2018-2019 and 2019-

---

[2] The eastern portion of the eastern earth embankment wall of Edenville Dam breached on May 19, 2020, following the unprecedented confluence of wind, torrential rains and flooding associated with a late spring storm interacting with moisture from mid-Atlantic Ocean Tropical Storm Arthur, that led to the severe flooding of roadways and bridges and the swelling of the Tittabawassee River basin north of the Edenville Dam, and ultimately, of the Wixom Reservoir and the homes and businesses located downstream in Midland County, Michigan.

2020 winter drawdowns constitute "wetlands" as alleged, consistent with the wetlands definition set forth in U.S. Environmental Protection Agency ("USEPA") and U.S. Army Corps of Engineers ("USACE") regulations (40 CFR § 230.3(t); 33 CFR § 328.3(b)) implementing § 404 of the Federal Water Pollution Control Act (the U.S. Clean Water Act) 33 § USC 1344, as determined by the application of the federal technical wetland delineation standards set forth in the [USACE] January, 1987 Wetland Delineation Manual report Y-87-1, and appropriate regional [USACE] supplement[], in identifying wetland boundaries…"; (**g**) whether Wixom Lake is a "water of the United States" consistent with Section 502(7) of the federal water pollution control act (U.S. Clean Water Act), 33 USC § 1362, such that if wetlands are found to exist within or contiguous or adjacent to Wixom Lake they will be jurisdictional; and (**h**) whether the alleged deaths of freshwater mussels in Wixom Reservoir (Lake) were otherwise attributable to the State agencies' failure to comply with one or more of the following federal law standards governing with respect to Wixom Lake and the Tittabawassee and Tobacco River basins: (**i**) lakeside herbicide/pesticide runoff, (**ii**) use of molluscicides, (**iii**) application of reservoir weed abatement chemicals, (**iv**) disposal of municipal waste, and (**v**) emission of industrial/commercial/recreational pollution into waters of the United States (Clean Water Act, 33 U.S.C. §§ 1342, 1362(12), 1370; and (**vi**) nitrification, predation and/or food source depletion caused by invasive mussel (e.g., zebra and quagga mussel), fish (e.g., Asian catfish) and plant (e.g., purple loosestrife and Eurasian watermilfoil) species (Lacey Act, P.L. 97-79, 95 Stat. 1073 et seq., as amended, codified in 16 U.S.C. §§ 3371-3378; Plant Protection Act, Title IV, P.L. 106-224, 114 Stat. 438 et seq., as amended, codified in 7 U.S.C. §§ 7701-7721; National Invasive Species Act, P.L. 104-332, 110 Stat. 4073 et seq., as amended, codified in 16 U.S.C. §§ 4701-4702).[3]

---

[3] The basis for removal of this second State lawsuit is further supported by this Court's supplemental jurisdiction

9.      That the federal questions necessarily raised in the State's new state law Complaint are important and substantial is further demonstrated by the February 20, 2020 letter correspondence sent by the USFWS to Defendants, based on ostensible evidence provided by EGLE and MDNR of "suggested" snuffbox presence in Wixom Reservoir and the Tittabawassee and Tobacco River Basins, calling upon Defendants to undertake quite burdensome prospective protective measures "to ensure that unpermitted take of snuffbox mussels does not occur," and thereby, implicating USFWS jurisdiction under the Endangered Species Act, and potentially under the Plant Protection Act and National Invasive Species Act. *See* Michigan's new state court Complaint, Exhibit A**.**

10.     That the federal questions necessarily raised in Michigan's new state Complaint are important and substantial is also further demonstrated by the administrative warrant served upon Defendants on June 3, 2020, by EGLE and MDNR, to secure access to the Wixom Reservoir bottomlands owned by Defendants so that staff from EGLE, MDNR, USFWS, USACE, FERC, and the Federal Emergency Management Agency ("FEMA") can "walk[] the Property, us[e] hand tools (e.g., shovels, rakes) to locate aquatic species, photograph[] and/or videotap[e] any aquatic species […], and collect[] voucher specimens," which activities are "necessary to assess natural resource damages and determine whether [protected] aquatic species […] were harmed," following an intervening force majeure event that took place since the filing

---

pursuant to 28 U.S.C. § 1367(a), because the remaining state common law tort claims are "sufficiently related to other claims that they form part of the same case or controversy under Article III of the Constitution" and "'derive from a common nucleus of operative facts.'" 28 U.S.C. § 1367(a); *Blakely v. U.S.*, 276 F.3d 853, 861 (6th Cir. 2002), (quoting *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)).  Plaintiffs' remaining state law claims allege conversion of state natural resources (e.g., freshwater mussels and wetlands) and public nuisance resulting from the deprivation of natural resources (e.g., the Wixom Lake ecosystem, including freshwater mussels, wetlands, and impounded Wixom Reservoir waters lake waters), and also seek an injunction and order calling for the immediate repair/reconstruction of Edenville Dam, the immediate restoration of the manmade impoundment known as Wixom Reservoir and its ecosystem, and consequently, the immediate cessation of the drawdown of the reservoir caused by Edenville Dam's breach.   Plaintiffs EGLE and MDNR can hardly argue that these state law claims do not derive from the same common nucleus of operative facts.

of the Complaint,[4] thereby implicating USFWS jurisdiction under the Endangered Species Act, and potentially, under the Plant Protection Act and National Invasive Species Act, USACE jurisdiction over wetlands under the federal Clean Water Act, and FERC's direct ongoing jurisdiction over the FERC-licensed Sanford Dam, Smallwood Dam and Secord Dam, and FERC's apparent liaison jurisdiction over the forensic investigation of the Edenville Dam in coordination with EGLE-WRD and Dam Safety Divisions and MDNR under the Federal Power Act and under the prior Edenville Dam license the terms of which are incorporated into state law by court order.

11.    That the federal questions necessarily raised in the State's new state Complaint are important and substantial is also further demonstrated by FERC's May 20, 2020 Order and June 9, 2020 letter directing Defendant Boyce Hydro Power, LLC to ensure that a forensic investigation is conducted by the same Independent Forensic Investigation Team on the three FERC-licensed dams and one non-FERC-licensed dam owned and operated by Defendants, in the manner described in paragraph 8 above.

12.    That the federal questions necessarily raised in the State's new state Complaint are important and substantial is also further demonstrated by the recent exercise of federal oversight jurisdiction by the U.S. House of Representatives Committee on Energy and Commerce with respect to Edenville Dam and the Wixom Reservoir.  On June 1, 2020, Energy and Commerce Committee members, including the Chairman, dispatched letters to Neil Chatterjee, Chairman of the FERC, and to Liesl Clark, Director of EGLE, expressing Congress'

[4] The State's new Complaint falsely alleges that Defendants' conduct, and not an intervening force majeure event occurred, namely, an unprecedented torrential rainstorm aggravated by an east coast tropical storm, that triggered unprecedented flooding in the Tittabawassee River Basin, that resulted in the breach of a portion of the eastern Tittabawassee River embankment of Edenville Dam and the emptying of the Wixom Reservoir beyond the traditional natural channels of the Tittabawassee and Tobacco Rivers, two navigable waterways, which event only further implicates the complex federal issues explicitly and implicitly contained in the State's new Complaint.

interest in thoroughly investigating federal and state governmental regulatory oversight of the Edenville Dam, and asking specific pointed questions to each regulatory agency based on partial information the Committee had received from sources other than Defendants.  A copy of the House Committee on Energy and Commerce letters are attached as **Exhibits E and F**. Congress' exercise of its federal oversight jurisdiction clearly implicates and will further publicly reveal *inter alia* that (**a**) FERC exercising ordinary prudence, should have known when it made the determination to revoke the Edenville Dam license in 2018 that Michigan's EGLE Dam Safety Division, which had long been familiar with the condition of Edenville Dam because of the extensive prior correspondence liaison relationship its MDEQ predecessor and MDNR and their officials enjoyed with FERC, was (**i**) comprised only of two-three-persons, and thus, could not conceivably safely regulate and oversee the State's more than one hundred high hazard dams (including the Edenville Dam, perhaps, the largest such dam) and more than one thousand dams overall, (**ii**) especially where EGLE-WRD's Dam Safety Division program has long been severely underfunded, on an annual basis, by more than several hundred million $ dollars as had been previously reported by the 21[st] Century Infrastructure Commission to former Michigan Governor Snyder, by the Michigan Section of the American Society of Civil Engineers, and most recently, by Governor Whitmer, herself; (**b**) FERC, exercising ordinary prudence, should have known before handing jurisdiction of the Edenville Dam to the nominal EGLE-WRD Dam Safety Division, that FEMA had determined, in 2012, that Michigan's dam safety standards were ***among the least stringent in the nation***, with a 50% (200-year flood) rather than the 100% (100-year flood) probable maximum flood spillway inflow standard FERC had required the Edenville Dam to meet,[5] ***and* <u>no</u> requirement**, unlike FERC, for probable maximum precipitation/probable

---

[5] FERC had deemed the Edenville Dam potentially unsafe because it could meet only approximately 50% of the 100% PMF standard due to the need for auxiliary spillways.  However, in late September-early October 2018, when

maximum flood design, thereby rendering highly suspect, and potentially legally culpable, FERC's 2018 determination that its revocation of the Edenville Dam FERC license would not compromise the public safety of Michigan residents, particularly those persons residing and operating businesses downstream of the Edenville Dam in the Village of Sanford, Northwood University, the City of Midland, etc., who suffered extensive property loss and damage and displacement as the result of the Edenville Dam breach; (**c**) the MDNR, consistent with its well-defined but little known <u>federal- and state-subsidized dam removal policy</u> extensively documented in an article recently published in the Michigan State University Law Review, and as reported by the media, used $1 million of its appropriated funds dedicated to a "remove or repair dams" program to remove functional dams to increase recreation and tourism opportunities, and recently denied a $1.6 million dam repair grant applied for by the Four Lakes Task Force, the governmental unit of Gladwin and Midland Counties, Michigan charged with regulating the levels of Wixom Reservoir (Lake) which had contracted to purchase and refurbish the Defendants' four dams for the residents enjoying the recreational opportunities each dam reservoir had previously provided them free of cost; and (**c**) despite EGLE Dam Safety Division's ongoing correspondence liaison with FERC, FERC should have prudently and properly kept EGLE Dam Safety Division informed about, and EGLE Dam Safety Division should have prudently and properly sought access pursuant to well-defined FERC regulations

---

EGLE-WRD Dam Safety Division assumed jurisdiction over and inspected the Edenville Dam, it concluded that the dam had approximately met the 50% PMF standard. ***Thus, a dichotomy in public safety perspective arose***, **where FERC considered the Edenville Dam *unsafe* at the approximate 50% PMF level requiring the construction of auxiliary spillways, and EGLE-WRD Dam Safety considered the Edenville Dam *safe* at the approximate 50% PMF level, *not* requiring the construction of auxiliary spillways**.  While applicable Michigan law (NREPA Part 315) requires EGLE-WRD Dam Safety Division to direct the owner-operator of a high hazard dam that fails to meet the 50% PMF standard to construct an auxiliary spillway(s), the EGLE-WRD Dam Safety Division did ***not*** require Defendants to do so because, in 2018 and 2019, it considered the Edenville Dam to be safe – i.e., not to pose a public safety risk.  It was not until EGLE-WRD Dam Safety experienced an epiphany and filed its second state law Complaint, that it newly imposed such a requirement through the Complaint.

spelling out the procedure for third parties to obtain classified "critical energy infrastructure information" regarding the Edenville Dam, including the most recent FERC dam safety inspections, which inordinately focused on the dam's inadequate spillway capacity and otherwise found the Edenville Dam to be in fair condition, including its earth embankment walls.

13.     Defendants reserve the right to supplement this Notice of Removal and/or to present additional arguments in support of its entitlement to removal.

14.     No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, affirmative defenses, and motions are hereby reserved.

15.     Defendants will file, today, a true and complete copy of this Notice with the Clerk of the Circuit Court for the 30th Judicial Circuit of Ingham County, Michigan, and will provide a written notice of this Notice electronically via the ECF system to Plaintiffs' counsel, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants Lee Mueller, Boyce Michigan LLC, Edenville Hydro Property LLC, Boyce Hydro Power LLC, Boyce Hydro LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650, Stephen B. Hultberg, and Michele G. Mueller respectfully request that the above-referenced State Action now pending in the 30th Judicial Circuit of Ingham County, Michigan, be removed to the United States District Court for the Western District of Michigan, Southern Division.

Respectfully submitted,

VARNUM LLP

Date:  June 10, 2020                By:  /s/ Aaron M. Phelps
                                    Aaron M. Phelps (P64790)
                                    Business Address & Telephone:
                                    Bridgewater Place, PO Box 352
                                    Grand Rapids, MI, 49501-0352
                                    Phone:  (616) 336-6000

13

Fax:  (616) 336-7000
amphelps@varnumlaw.com

THE KOGAN LAW GROUP, P.C
Lawrence A. Kogan (NY # 2172955)
Business Address & Telephone:
100 United Nations Plaza, Suite #14F
New York, NY 10017
(212) 644-9240
`                    lkogan@koganlawgroup.com

*Attorneys for Defendants*
*Lee Mueller, Boyce Michigan, LLC, Edenville*
*Hydro Property LLC, Boyce Hydro Power LLC,*
*Boyce Hydro LLC, WD Boyce Trust 2350, WD*
*Boyce Trust 3649,WD Boyce Trust 3650, Stephen B.*
*Hultberg, and Michele G. Mueller*