UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE MICHIGAN DEPARTMENT OF            )
ENVIRONMENT, GREAT LAKES, AND         )
ENERGY, et al.,                       )
                                      )
            Plaintiffs,               )
                                      )        No. 1:20-cv-528
v.                                    )
                                      )        Honorable Paul L. Maloney
LEE MUELLER, et al.,                  )
                                      )
            Defendants.               )
_____ )

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This matter comes before the Court following the Edenville dam collapse on May 19, 2020. Following a multi-day rainstorm, the level of Wixom Lake rose to a record high. The east end of the Edenville dam embankment failed, which allowed Wixom Lake—and all its contents—to rush down the Tittabawassee River where it would eventually overwhelm the Sanford dam. What ensued was one of the worst environmental disasters that the State of Michigan has ever experienced. Although no fatalities were reported, the flooding caused millions of dollars in damage to the environment and private property alike. This action is one of many filed against Lee Mueller and his companies.

A. Procedural History

This action was originally filed in the Ingham County Circuit Court by the Plaintiffs the Michigan Department of Environment, Great Lakes, and Energy ("EGLE") and the

Michigan Department of Natural Resources ("DNR") on June 9, 2020. Plaintiffs brought a slew of claims. (ECF No. 1-1 at PID 46–52). Plaintiffs brought claims under Michigan's Natural Resources and Environmental Protection Act ("NREPA") Parts 17, 31, 301, 303, 315, 401, and 487. *Id.* Plaintiffs' NREPA claims were accompanied by claims for conversion, public nuisance, and unjust enrichment. *Id.*

Defendants removed the action to this Court. (ECF No. 1). The Court stayed the case after Boyce Hydro LLC and Boyce Hydro Power LLC filed for bankruptcy. (ECF No. 36). During the stay, a bankruptcy action proceeded through the United States Bankruptcy Court for the Eastern District of Michigan. The bankruptcy plan precluded Plaintiffs from seeking monetary damages from Defendants, but it did permit Plaintiffs to exercise their police powers in seeking declaratory relief. (ECF No. 249-5 at PID 6929). This Court lifted the stay on November 30, 2021. (ECF No. 60). On May 25, 2023, Plaintiffs filed a motion for summary judgment against Defendants Boyce Michigan, LLC, Boyce Hydro Power, LLC, Boyce Hydro, LLC, WD Boyce Trust 2350, WD Boyce Trust 3649, WD Boyce Trust 3650, collectively the ("Defendants"). (ECF No. 247).

B. Factual Allegations

On a motion for summary judgment, parties may assert facts by citing depositions, documents, electronically stored information, declarations, and other materials from discovery. Fed. R. Civ. P. 56(c). Plaintiffs' Exhibit A contains the deposition transcript of Lee Mueller, who owned the Edenville dam when it failed. In Mueller's deposition, he acknowledged that Defendants knew the Edenville dam embankment might fail. (ECF No.

248-1 at PID 6539). Exhibit A also includes an email dated November 17, 2021, from Lee

Mueller to an engineer that said the following:

> What I do remember is that in 2010 I expressed concern, and Frank Christie
> and Steve Doret agreed with me that the top of the embankment (the crest)
> from the east end to the spillway was far too narrow and the side slopes too
> steep for the top seven or eight feet. We were all concerned about this for
> multiple reasons.

(ECF No. 248-1 at PID 6543). Also in Exhibit A is a "Design Report" for "Dam

Modifications for Upgrading Spillway Capacity" on the Edenville dam, which was prepared

by Frank Christie in October 2012 and never implemented. (ECF No. 248-1 at PID 6546–

55).

Frank Christie was Defendants' general manager and engineer. (ECF No. 248-6 at

PID 6576). Mr. Christie left the employment of Defendants in 2017. (ECF No. 248-6 at

PID 6598–6600). Mr. Christie testified that he left because of all the problems

accumulating at both the Edenville and Sanford dams. *Id.* From this factual background,

Plaintiffs assert that Defendants knew of the Edenville dam's vulnerability, prepared a plan

to resolve it, and then never implemented said plan. Mr. Christie testified that, in lieu of

fixing the problems with the dam, Mr. Mueller engaged in several other money-making

schemes like building a parking lot and pole barn, digging a pond, attempting to build a

marina, attempting to build a travel trailer park, and attempting to host a music festival.

(ECF No. 248-6).

In support of their claims, Plaintiffs also cite several reports and declarations. First,

Plaintiffs brought a report from Dr. Scott Olson, who reviewed and agreed with the

findings of the Independent Forensic Team ("IFT"). (ECF No. 248-7 at PID 6604). Both

Dr. Olson and the IFT concluded that "the failure of the Edenville dam was triggered by static liquefication of a portion of the left embankment." (ECF No. 248-7 at PID 6606). Dr. Olson's report concludes that if the sheet pile wall proposed by Mr. Christie had been implemented, it "would have been more likely than not to have prevented the failure." (ECF No. 248-7 at PID 6609).

Plaintiffs cite a declaration and report from Dr. Jeff Jolley of the DNR Fisheries Division. Dr. Jolley concluded, "The total combined economic loss of fish replacement costs and lost recreational value projected over 5 years, a conservative estimate of when the reservoirs might be restored, is over $21 million." (ECF No. 248-9 at PID 6635). Another report from Elle Gulotty, a resource analyst for the DNR, estimates that 2,991,682 mussels were killed across Wixom and Sanford lakes because of the Edenville dam failure. (ECF No. 248-10 at PID 6667). She estimates that replacing those mussels would exceed $90 million in costs. *Id.* Finally, the declarations from Bethany Matousek (ECF No. 248-12) and Ms. Joy Brooks (ECF No. 248-13) further document and outline the environmental disaster following the Edenville dam failure.

On this record, Plaintiffs assert a strong factual basis indicating NREPA culpability. In response, Defendants provide nothing to the contrary.

## II. Legal Standard

"Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Tlapanco v. Elges*, 969 F.3d 638, 646 (6th Cir. 2020); Fed. R. Civ. P. 56(a). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010).

### III. Analysis

Plaintiffs seek summary judgment on four claims under (1) Part 315 of NREPA; (2) Part 17 of NREPA; (3) Part 31 of NREPA; (4) Part 301 of NREPA. (ECF No. 248 at PID 6516–17).[1]

A. Part 315 NREPA (Dam Safety)

Plaintiff alleges that Defendant violated Part 315 of NREPA by failing to notify EGLE of the Edenville dam's vulnerability. Plaintiffs further allege that Defendants knew for at least ten years before its dam failed that part of the dam was susceptible to failure if lake levels got too high.

NREPA's Part 315 requires dam operators to "advise [EGLE] and the affected off-site public authorities and safety agencies of any . . . unusual or alarming circumstances or occurrence existing or anticipated that may affect the safety of the dam . . . ." MCL § 234.31520(1). Part 315 does not apply to dams regulated by FERC, but FERC removed its jurisdiction over the Edenville dam in 2018. Plaintiffs' Exhibit H—a letter from FERC to Mr. Mueller—stated, "Boyce Hydro also owns and operates the Edenville dam, which is under the jurisdiction of the State of Michigan." (ECF No. 248-8 at PID 6623). Therefore,

---

[1] Plaintiffs argue that Defendants are barred from relitigating issues resolved by a final state court judgment, which Plaintiffs attached to their motion as Exhibit B. (ECF No. 248-2 at PID 6559); *EGLE v. Mueller*, No. 20-255-CE (Ingham Cnty. Cir. Ct. Mar. 10, 2023) However, Plaintiffs do not clearly explain which facts or issues Defendants should be prevented from relitigating. At any rate, the Court need not engage in a collateral estoppel analysis because Defendants do not intend to relitigate any of the state court findings here.

when the Edenville dam failed, it was under the jurisdiction of the State of Michigan via EGLE.

Plaintiffs brought sufficient evidence to show that Defendants knew of its dam's vulnerability and that Defendants did not make EGLE aware of that vulnerability. Defendants do not dispute either assertion. Plaintiffs' point to Mr. Mueller's deposition when he acknowledged that Defendants knew the embankment might fail. (ECF No. 248-1 at PID 6539). Additionally, Defendants designed a sheet pile cutoff wall to address the problem and reinforce the dam, which was dated November 29, 2011. (ECF No. 248-1 at PID 6551–55). Unfortunately, that plan was never implemented. Defendants' knowledge of the Edenville dam's weakness is an "alarming circumstance" that "affect[ed] the safety of the dam" as described in Part 315. MCL § 234.31520(1). Plaintiffs are entitled to judgment as a matter of law on their Part 315 claim.

**B. Part 17 NREPA (Environmental Protection)**

Plaintiff alleges that Defendant violated Part 17 of NREPA. Part 17 provides a cause of action "for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction." MCL § 324.1701(1). Defendant did "not take a position on whether the [Defendants] violated NREPA." (ECF No. 249 at PID 6713).

There exists sufficient evidence that Defendants polluted, impaired, and destroyed Michigan's natural resources through its continued failure to make necessary improvements to the Edenville dam. For example, attached to Plaintiffs' motion is a Declaration of Bethany Matousek, who is the Inland Lakes and Streams Program

Coordinator at EGLE. Following the dam collapse, Ms. Matousek visited the Edenville and Sanford dams at least 13 times. (ECF No. 248-12 at PID 6688). Ms. Matousek's report is troubling, and it concludes the Edenville dam failure led to soil erosion, the death of wildlife like fish and turtles, and the accumulation of trash and debris. (*Id.* at PID 6688–90). Defendants offer nothing to the contrary. Plaintiffs are entitled to judgment as a matter of law on their Part 17 claim.

C. Part 31 NREPA (Water Resources)

Plaintiff alleges that Defendant violated Part 31 of NREPA. Under Part 31, a person cannot "fill or grade or permit the filling or grading [of] . . . a floodplain, stream bed, or channel of a stream" without a permit. MCL § 324.3108(1). Defendant did "not take a position on whether the [Defendants] violated NREPA." (ECF No. 249 at PID 6713). It is undisputed that Defendants did not have a permit to allow excess water from behind the Edenville dam to flow downstream into the Tittabawassee River. The Edenville dam's failure, coupled with the multi-day rainstorm, allowed a tremendous volume of water to rush downstream into floodplains, stream beds, and river channels connected to the Tittabawassee River. Sediment flowed with the water as well. *See, e.g.,* (ECF No. 248-12); (ECF No. 248-13). The declaration of Ms. Joy Brooks, whose position includes issuing state floodplain permits, includes the following:

> While [at the Edenville dam and Sanford dam failures] I observed a lot of debris being transported and deposited along the flood route downstream of the dams; the debris included trees, playground equipment, home furniture, propane tanks, and other miscellaneous objects. The debris was located within the bottomlands of Sanford Lake, in the bottomlands and 100-year floodplain of the Tittabawassee River downstream of the Sanford dam, and

in upland areas outside the 100-year floodplain of the Tittabawassee River downstream of the Sanford dam.

(ECF No. 248-13 at PID 6699). The Edenville dam collapse allowed water, sediment, and other debris to fill floodplains downstream. Plaintiffs are entitled to judgment as a matter of law on their Part 31 claim.

### D. Part 301 NREPA (Inland Lakes & Streams)

Plaintiff alleges that Defendant violated Part 31 of NREPA. Under Part 301, a person without a permit cannot "create, enlarge, or diminish an inland lake or stream." MCL § 324.30102(1)(d). Again, Plaintiffs have submitted ample evidence showing that Defendants violated this portion of NREPA. Prior to the Edenville dam's failure, it supported Wixom Lake. Naturally, when the dam failed, Wixom Lake and all of its contents drained into the Tittabawassee River. (ECF No. 248-12 at PID 6688, 6690). Pictured below is Wixom Lake on June 10, 2020, just weeks after the dam collapsed:



(ECF No. 249-12 at PID 6694). It is undisputed that the Edenville dam failure diminished Wixom Lake. Defendants lacked a permit to do so. Therefore, Plaintiffs are entitled to judgment as a matter of law on their Part 301 claim.

## IV. Conclusion

Defendants owned and controlled the Edenville dam beginning in 2006 and up to and including the date its east embankment failed on May 19, 2020. Defendants violated Parts 315, 17, 31, and 301 of Michigan's Natural Resource and Environmental Protection Act.

**IT IS HEREBY ORDERED** that Plaintiffs' motion for summary judgment (ECF No. 247) is **GRANTED**.

**IT IS SO ORDERED.**

Date:   October 6, 2023                          /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge